UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                      Case No. 17-CR-108 (PP)

DEVONTEA WALTON,

        Defendant.

## PLEA AGREEMENT

1. The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Margaret B. Honrath, Assistant United States Attorney, and the defendant, Devontea Walton, individually and by attorney Victor Plantinga, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in five counts of a seven-count indictment, which alleges violations of Title 18, United States Code, Sections 371, 924(c)(1)(A)(ii), 1951, 2119(1), and 2.

3. The defendant has read and fully understands the charges contained in the indictment. He fully understands the nature and elements of the crimes with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to the following counts set forth in full as follows:

## COUNT FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

1. At all times material to this Indictment, the US Cellular store, located at 9123 West Lincoln Avenue, in West Allis, Wisconsin, was a business engaged in the purchase and sale of articles and commodities in interstate commerce.

2. On or about May 5, 2017, in the State and Eastern District of Wisconsin,

**MONROE J. WALTON III and DEVONTEA M. WALTON**

did unlawfully obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by robbery in that the defendants did unlawfully take and obtain electronic devices from and in the presence of an employee of US Cellular against his will by means of actual and threatened force, violence, and fear of injury.

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

## COUNT FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about May 5, 2017, in the State and Eastern District of Wisconsin,

**MONROE J. WALTON III and DEVONTEA M. WALTON**

did knowingly use, carry, and brandish a firearm during and in relation to a crime of violence, for which they may be prosecuted in a court of the United States, that is Count Four of this Indictment.

All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 2.

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment A beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, these offenses.

## PENALTIES

6. The parties understand and agree that each count to which the defendant will enter a plea of guilty carries the following penalties:

> **COUNT FOUR:** 20 years maximum term of imprisonment and $250,000 fine; up to three years of supervised release; and $100 mandatory special assessment. The parties further recognize that a restitution order may be entered by the court.
>
> **COUNT FIVE:** Mandatory minimum of seven years and up to life in prison, which must run consecutive to any other sentence; maximum of five years of supervised release and $250,000 fine; and $100 mandatory special assessment.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF REMAINING COUNTS

8. The government agrees to move to dismiss the remaining counts of the indictment as to this defendant at the time of sentencing.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of **Hobbs Act Robbery** as set forth in Count Four, the government must prove each of the following propositions beyond a reasonable doubt:

First, the defendant knowingly obtained property from or in the presence of a person,

3

Second, the defendant did so by means of robbery,

Third, the defendant believed that the person parted with the property because of the robbery; and

Fourth, the robbery affected interstate commerce.

10. The parties understand and agree that in order to sustain the charge of **brandishing a firearm during a crime of violence** as set forth in Count Five, the government must prove each of the following propositions beyond a reasonable doubt:

First, the defendant committed the crime charged in Count Four of the indictment; and

Second, the defendant knowingly used and brandished a firearm during that crime.

## SENTENCING PROVISIONS

11. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

12. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

13. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 4. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

14. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties

4

may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

15. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

16. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty. The parties further acknowledge and understand that the government will provide to the sentencing court all of the information the government believes is relevant to the sentencing, including the facts surrounding the May 22, 2017 carjacking of S.V. The defendant agrees not to object to the inclusion of this information in the presentence report and discussed at sentencing. The parties understand that this information will not affect the offense level calculation.

## Base Offense Level

17. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in Count Four is 20 under Sentencing Guidelines Manual § 2B3.1.

5

### Reckless Endangerment During Flight Adjustment

18.     The parties acknowledge, understand, and agree that the government will recommend to the sentencing court that a two-level increase for the defendant's vehicular flight from law enforcement on May 10, 2017, which created a substantial risk of death or serious bodily harm to another person, under Sentencing Guidelines Manual § 3C1.2 is applicable to the offense level.

### Acceptance of Responsibility

19.     The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. The defendant acknowledges, understands, and agrees that conduct consistent with the acceptance of responsibility includes but is not limited to the defendant's voluntary identification and disclosure to the government of any and all actual or potential victims of the offense prior to sentencing. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

### Sentencing Recommendations

20.     Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

21. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the amount of restitution and the terms and condition of its payment; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

22. The government agrees to recommend a sentence within the applicable sentencing guideline range, as determined by the court.

## Court's Determinations at Sentencing

23. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

24. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

25. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule.

7

Case 2:17-cr-00108-PP   Filed 07/12/18   Page 7 of 16   Document 62

The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

26. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form. The defendant further agrees, upon request of FLU whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

## **Special Assessment**

27. The defendant agrees to pay the special assessment in the amount of $200 prior to or at the time of sentencing.

## **Restitution**

28. The defendant agrees to pay restitution to U.S. Cellular and S.V., as ordered by the court. The defendant understands that because restitution for the offenses is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action

8

## DEFENDANT'S WAIVER OF RIGHTS

29. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

    a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

    b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

    c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

    d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

    e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

30. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant

9

under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

31. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

32. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

33. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statutes or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statutes or Sentencing Guidelines. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective assistance

10

of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

### Further Civil or Administrative Action

34. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### GENERAL MATTERS

35. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

36. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

37. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

38. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may

11

be different from those of the parties to this agreement. The defendant agrees not to object to any submission either in writing or at sentencing from the May 22, 2017 carjacking victim, S.V.

### **Further Action by Internal Revenue Service**

39. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the indictment.

40. The defendant agrees to transmit his original records, or copies thereof, to the Examination Division of the Internal Revenue Service so that the Examination Division of the Internal Revenue Service can complete its civil audit of the defendant and other named persons. The defendant agrees to provide any additional books and records of his and other named persons which may be helpful to the Examination Division of the Internal Revenue Service to complete its civil audit of defendant and other named persons.

### **EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT**

41. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands,

12

however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

**VOLUNTARINESS OF DEFENDANT'S PLEA**

42. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 7/10/18

DEVONTEA WALTON
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 7/10/18

VICTOR PLANTINGA
Attorney for Defendant

For the United States of America:

Date: 7/11/18

MATTHEW D. KRUEGER
United States Attorney

Date: July 10, 2018

MARGARET B. HONRATH
Assistant United States Attorney

14

# ATTACHMENT A

Had this case proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt. These facts are based upon information provided by surveillance footage, law enforcement agents, citizen witnesses, latent print analysis, business records, and physical evidence seized. This information is provided for the purpose of setting forth a factual basis for the defendant's guilty plea. It is not a full recitation of the defendant's knowledge of, or participation in, the offenses.

## Armed Robbery of US Cellular in West Allis on May 5, 2017 (Count Four)

On May 5, 2017, at approximately 3:17 p.m., two black men entered the US Cellular Store located at 9123 West Lincoln Avenue, in West Allis, Wisconsin. The suspects began removing several phones and ipads from the store shelving units using physical force. When store employees attempted to intervene, Suspect #1, later identified as Devontea Walton, removed a small silver revolver from his waistband and held it in his right hand. Suspect #1 said something to the effect of, "I'll fucking take everything here." The employees backed up and raised their arms, and the suspects fled the store with several electronic devices worth a total of $4,320. They fled the area in a silver Nissan Maxima (early 2000's) with heavily tinted windows, dark rims, and an unknown WI temporary plate.

The surveillance footage and victim descriptions showed that Suspect #1 was wearing a long gray hooded sweatshirt, a white tank top, capri style jeans with red knee length socks, black tennis shoes, and a black and white baseball hat. Suspect #1 displayed a small silver revolver that he pulled from his right pocket or waistband area. Suspect #2 was wearing a gray hooded sweatshirt, grey sweatpants, white tennis shoes, and a black baseball hat.

A cooperating defendant who is familiar with Devontea and Monroe Walton has viewed the surveillance footage and identified Devontea Walton as the gunman (Suspect #1). The cooperating defendant identified suspect #2 as Monroe Walton. In addition, Devontea Walton and Monroe Walton wore clothing during this robbery that was consistent with the clothing they wore during retail thefts of cell phone stores over the course of the preceding months. Lastly, the silver revolver brandished during this robbery is consistent with the firearm that Devontea Walton brandished after an attempted retail theft at Walmart on April 22, 2017, and the firearm in his hand on a Facebook post from April 27, 2017.

Latent print analysis of the security devices reflected that Monroe Walton's fingerprint was recovered from one of the security devices in the store, in the same area where the subjects were grabbing the electronic devices and ripping them from the security devices.

## Devontea's Vehicular Flight from Police on May 10, 2017

On May 10, 2017, at about 3:10 p.m., officers were conducting surveillance of 1341 W. Brown Street, an address associated with Devontea Walton through his girlfriend, Debbie Davis. Officers saw two people enter a silver 2001 Nissan Maxima, which was consistent with the vehicle used in the West Allis US Cellular robbery and several retail theft incidents. When officers started to approach the vehicle. The driver put the vehicle in reverse and appeared as though he was going to ram the approaching squads. The driver then put the vehicle back into drive and took off

at a high rate of speed. Squads followed the Nissan Maxima and activated their emergency lights and sirens. A Mercury Milan car was driving near the Nissan Maxima and seemed to be acting in concert with the driver of the Nissan. The Mercury Milan was between the primary squad and the Nissan Maxima, acting as a "Rolling Baricade." Finally, officers were able to pass the Mercury Milan, but could not catch the Nissan Maxima. The Nissan Maxima was later found abandoned at 3064 N. 25th Street.

Inside the Nissan, officers recovered 19 rounds of .38 caliber special ammunition, consistent with that used in a revolver. Law enforcement also recovered clothing, some of which was consistent with clothing worn during the retail theft incidents and the Walmart incident. Law enforcement recovered identifiers for Debbie Davis and Devontea Walton. In the glove box, law enforcement recovered a cell phone with the display cord attached to a plastic holder piece, consistent with the phones stolen in this case.

Monroe Walton's fingerprint was recovered from the exterior passenger door of the Nissan Maxima.

The driver of the Mercury Milan returned to W. Brown Street and was identified as B.J., Devontea Walton's girlfriend's sister. B.J. was questioned and denied that she was acting as a rolling barricade. She identified Devontea Walton as her sister's boyfriend. B.J. stated that she was aware that Devontea and Monroe Walton steal cell phones from businesses. Devontea told her that they make $7,000 per week stealing cell phones and they sell them to a "business guy." B.J. has seen Devontea with two different handguns.

### Search Warrant on 1341 W. Brown Street (Devontea Walton's girlfriend's residence)

On May 10, 2017, officers executed a search warrant at Devontea Walton's girlfriend's residence, where Devontea was residing. They recovered multiple clothing items consistent with clothing worn during the robberies and retail thefts, including a pair of knee-high red socks, black Air Jordan shoes, and a .38 special round of ammunition, consistent with ammunition for a revolver.

Devontea Walton hereby admits that he committed the US Cellular store robbery with Monroe Walton on May 5, 2017. Devontea Walton further admits that he brandished a firearm during this robbery.

2